UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Robert Johnson | Leslie Horowitz |

**Proceedings:** PLAINTIFFS' MOTION TO ALTER JUDGMENT
(Dkt. #61, filed February 11, 2014)

## I. INTRODUCTION

Plaintiffs Agit Global, Inc. ("Agit") and Tzong In Yeh filed this action against defendant Wham-O, Inc. ("Wham-O") on November 5, 2009, asserting claims for patent infringement and an accounting. Dkt. #1. Plaintiffs filed a first amended complaint ("FAC") on July 30, 2010, dkt. #27, and defendant answered on August 10, 2010, dkt. #28.

In July 2011, the parties entered into a settlement agreement ("Settlement Agreement") and a patent license agreement ("License Agreement"), and stipulated to dismiss this action with prejudice.[1] Dkt. #45. The Settlement Agreement provides that Wham-O will pay $600,000 to Agit in quarterly installments over the course of the 11-year period from the date of the execution of the Settlement Agreement until April 1, 2022. Pls. Ex. C. The License Agreement provides that Wham-O will pay $1 million to Agit on substantially the same schedule as the payments under the Settlement Agreement, in exchange for the right to use plaintiffs' patents to manufacture and sell graphic snow sleds and body boards. Mot. Alter J. at 2; Pls. Ex. D.

The Court retained jurisdiction to enforce the Settlement and License Agreements. Dkt. #45. The parties also stipulated to an entry of judgment in the event that Wham-O defaulted on its obligations under the Agreements. Dkt. #46. Wham-O defaulted on its

---

[1] These Agreements also provided for settlement of a companion patent infringement action filed in Canada on February 28, 2008. Pls. Ex. H.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

payments on July 1, 2012. Dkt. #47, Johnson Decl. in Support of Entry of J. ¶ 7. As a result, judgment was entered against Wham-O in the amount of $1,454,520.00 on August 9, 2012. Dkt. #48.

On February 11, 2014, plaintiffs filed a motion to amend the judgment pursuant to Federal Rule of Civil Procedure 69 and California Code of Civil Procedure section 187, seeking to add nonparties Wham-O Marketing, Inc. ("Marketing") and Wham-O Holding, Ltd. ("Holding") as judgment debtors. Dkt. #61. Marketing opposed the motion on March 17, 2014, dkt. #68, and plaintiffs replied on March 24, 2014, dkt. #74. Holding has not filed an opposition.[2] The Court held a hearing on April 7, 2014, at which Marketing, but not Holding, appeared. After considering the parties' arguments, the Court finds and concludes as follows.[3]

---

[2] Although Holding has not filed an opposition, it has been properly served under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. In this regard, on February 28, 2014, a Hong Kong solicitor served Holding by posting a copy of plaintiffs' motion and supporting documents to Holding's registered Hong Kong Office. Ming Decl.; Cyrus II Partnership v. Rafizadeh, 392 B.R. 248, 256-59 (S.D. Tex. 2008) (stating that Hong Kong law permits service on a company by "sending it by post to the registered office of the company").

[3] Plaintiffs object to certain evidence presented by Marketing in connection with this motion. These objections are OVERRULED as moot because the Court does not rely on the evidence to which objection is made in ruling on this motion. Marketing also objects to evidence presented by plaintiffs, including an article in the San Francisco Chronicle and an article in Hemispheres Magazine. Dkt. #71. At oral argument, Marketing renewed its objection to the newspaper and magazine articles. Objections 1-6 and 11-14, which include Marketing's objections to the newspaper articles, are overruled as moot because the Court does not rely on the objected-to evidence herein. Objection 7 is addressed in Section IV(B). In objections 8-10, Marketing contends that Holding's annual reports, filed with the Hong Kong Companies Registrar, lack foundation and authentication under Federal Rule of Evidence 901. These objections are overruled because plaintiffs have provided certified copies of Holding's annual reports, see Fed. R. Evid. 902(b)(3), and the documents otherwise appear to be authentic based on their "appearance, contents, [and] substance." Fed. R. Evid. 901(b)(4).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

## II. BACKGROUND[4]

Raylin Hsieh owned Wham-O through Cornerstone Strategic Management Limited, a British Virgin Islands Company. Judgment Debtor Examination of Kyle Aguilar ("Aguilar Exam.") at 18-19, 23, 86; Pls. Ex. S. Cheng Hsieh, Raylin Hsieh's husband, was chairman of the Board of Directors of Wham-O. Aguilar Decl. ¶ 7. Holding is organized under Hong Kong law as a so-called "limited company," and Marketing is a Delaware Corporation. Pls. Exs. M, U. Cheng Hsieh currently owns 100% of Holding, and is its sole director. Pls. Ex. M. Kyle Aguilar is the sole owner and officer of Marketing, and served as the chief executive officer and secretary of Wham-O. Aguilar Exam. at 8, 22-24.

Plaintiffs here contend that the judgment against Wham-O should be amended to include Holding and Marketing as judgment debtors, on the grounds that they are successor companies of Wham-O, and therefore liable for Wham-O's debts, including the judgment in the present case. Plaintiffs assert two bases for Marketing and Holding's successor liability. First, plaintiffs assert that Holding and Marketing are operating as the "mere continuation" of Wham-O, by carrying on Wham-O's business operations. See Katzir's Floor and Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1150 (9th Cir. 2004). Second, plaintiffs assert that Holding and Marketing acquired Wham-O's assets through a series of fraudulent transactions designed to allow Wham-O to "escape liability for [its] debts." See id. Specifically, plaintiffs assert that Cheng Hsieh conducted a fraudulent foreclosure on all of Wham-O's assets, without giving notice to Wham-O's creditors, including plaintiffs. As a result of the foreclosure, Wham-O no longer possesses any assets with which it can make payments to plaintiffs under the Settlement and License Agreements. Plaintiffs assert that, in turn, Cheng Hsieh distributed Wham-O's assets among Holding and Marketing. Finally, plaintiffs assert that Holding and Marketing are collectively conducting the same business formerly conducted by Wham-O, free from the encumbrance of the judgment entered against Wham-O in the present case. Plaintiffs present the following evidence in support of these assertions.

---

[4] The relevant facts are undisputed, except as otherwise noted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

### A. The May 5, 2011 Loan Agreement

On May 5, 2011, Cheng Hsieh agreed to lend Wham-O up to $15,000,000 over the course of the following year. Pls. Ex. Y. This loan was secured by an interest in Wham-O's assets. Pls. Ex. Z. Additionally, on May 6, 2011, Raylin Hsieh and Aguilar executed an Amended and Restated Security Agreement, in which Raylin Hsieh agreed to deposit $1,000,000 with Hang Seng Bank in Hong Kong in order to provide security for a credit facility that was previously extended to Wham-O, Asia Limited. Pls. Ex. X. Wham-O, Asia is a wholly owned subsidiary of Wham-O. Pls. Ex. WW. Also on May 6, 2011, Aguilar entered into a Modification and Forbearance Agreement on behalf of Wham-O with Cheng Hsieh, in which Hsieh agreed to forebear on foreclosing on $2,500,000 in loans (plus $1,200,000 in accrued interest) that Hsieh made to Wham-O in 2006. Pls. Ex. W.[5]

### B. Execution of the Settlement and License Agreements and Formation of Marketing

Approximately three months after the signing of the $15,000,000 loan agreement, Kyle Aguilar signed the Settlement and License Agreements on behalf of Wham-O, and

---

[5] Plaintiffs detail a series of fluctuations in the balance sheet entries reflecting loans payable by Wham-O during 2011 and 2012. As of January 2, 2011, prior to the execution of the May 5, 2011 loan agreement, Wham-O's balance sheet showed that it owed $4,586,900 in "investor notes payable." Pls. Ex. CC. The balance sheet showed $9,519,928 in investor notes payable on December 31, 2011, Pls. Ex. DD, and showed $7,291,938 in investor notes payable on April 30, 2012, Pls. Ex. EE. Plaintiffs assert that these figures are comprised of a series of loans made to Wham-O by Cheng Hsieh pursuant to the May 5, 2011 loan agreement, plus the loans previously made to Wham-O by Hsieh in 2006, Mot. Alter J. at 7-8. Marketing does not appear to dispute this assertion. Aguilar testified that promissory notes were not prepared contemporaneously with the loans made by Cheng Hsieh. Aguilar Exam. at 167. However, in his declaration, he asserts that he signed a series of promissory notes on Wham-O's behalf in 2011, in favor of Cheng Hsieh. Aguilar Decl. ¶¶ 16-29; e.g., Def. Ex. P. Aguilar also testified that the loans were not reflected on federal tax returns because Wham-O did not file federal income tax returns in the "three or four years" prior to 2012. Id. at 60-61.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

this action was dismissed shortly thereafter.  Pls. Exs. C-D; dkt. #45.  Aguilar formed Marketing on the same day that he signed the Settlement and License Agreements.  See Pls. Ex. U.  Aguilar testified that he formed Marketing as "plan B" in order to try to "rescue whatever was left of [Wham-O's] sales and inventory and . . . potentially bring Wham-O back [on] track and make it bankable."  Aguilar Exam. at 108.  Plaintiffs assert that, during the negotiation of the Settlement and License Agreements, they were not informed of the May 5, 2011 loan agreement, and did not learn of it until "a couple of days" before Aguilar's Judgment Debtor Examination.  Id. ¶ 13(e).

  **C.** **Foreclosure by Cheng Hsieh on Wham-O's Assets in June 2012 and Default by Wham-O on its Payments Under the Settlement and License Agreements**

  Aguilar testified that Wham-O started generating profits in March and April 2012, and was able to pay interest to Cheng Hsieh on the loans he made to the company.  Aguilar Exam. at 104-05.  Wham-O's April 30, 2012 financial statement shows an $8,332,448 increase in Wham-O's "total current assets" compared to April 30, 2011.  Pls. Ex. EE.  In spite of Wham-O's improving financial condition, Cheng Hsieh's counsel sent a letter to Wham-O on May 31, 2012, stating that Hsieh intended to foreclose on loans totaling $12,372,447.  Pls. Ex. FF.  The foreclosure occurred on June 11, 2012, via a private sale, without notice to any creditors, or government agencies.  Pls. Ex. GG, HH, XX, YY.  The notice of foreclosure states that $13,650,685 was owed to Cheng Hsieh, representing an increase of $1,278,238 over the amount stated on the letter dated May 31, 2012.  See Pls. Exs. FF, HH.  According to plaintiffs, this loan amount also represented an unexplained increase of $5,080,509 over the amount reflected on Wham-O's April 30, 2012 financial statement.  No valuation was conducted of Wham-O's assets prior to the foreclosure.  Aguilar Exam. at 27, 134-36.  As a result of the foreclosure, Cheng Hsieh acquired ownership of all of Wham-O's assets.  Pls. Ex. HH, LL, JJ; Aguilar Exam. at 146 (stating that "Jeff Hsieh took all the assets").  On July 1, 2012, Wham-O defaulted on payments due to plaintiffs that were due under the Settlement and License Agreements.  Dkt. #47, Johnson Decl. in Support of Entry of J. ¶ 7.

  Plaintiffs assert that, based on Wham-O's financial statements, the foreclosure resulted in Cheng Hsieh receiving assets worth approximately $17,800,000 more than the $13,650,684 debt set forth in the notice of foreclosure.  This assertion is grounded on Wham-O's balance sheet dated April 30, 2012, which shows current assets of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

$22,163,730 and non-current assets (including patents and trademarks) worth $9,482,218. Pls. Ex. EE.[6] Thus, based on the balance sheet, Wham-O's total assets as of that date were worth $31,645,948. Id. Alternatively, plaintiffs assert that the loans made by Cheng Hsieh to Wham-O are more appropriately viewed as an "equity investment" in Wham-O and should therefore be subject to equitable subordination to the claims of general creditors such as plaintiffs. Mot. Alter J. at 13.

### D. Distribution of Wham-O's Former Assets to Holding and Marketing

After the foreclosure, Cheng Hsieh sold a portion of Wham-O's assets that he received in the foreclosure to Marketing, and assigned another portion of Wham-O's assets to Holding. To Marketing, Hsieh sold all of Wham-O's non-intellectual property assets, including all accounts receivable, pending purchase orders from retailers, pre-paid deposits to vendors that supplied products to Wham-O, all of Wham-O's inventory, and all of Wham-O's physical property. Aguilar Exam. at 50-55, 126. These assets were worth $22,163,730, according to Wham-O's April 30, 2012 balance sheet. Marketing asserts that it purchased these assets on July 1, 2012, at the price of $11,000,000, based on an "extended payment plan." Aguilar Decl. ¶¶ 35, 37. Regarding Holding, Cheng Hsieh assigned to it Wham-O's 133 United States trademarks, its 16 United States utility patents, and its 11 United States design patents. Pls. Exs. KK-MM. Holding then licensed all of its newly acquired intellectual property to Marketing, at a royalty rate of 2%, by an agreement dated November 28, 2012. Aguilar Decl. ¶ 36; Def. Ex. DD.

### E. Resumption of Wham-O's Operations by Holding and Marketing

After Hsieh transferred Wham-O's assets to Marketing and Holding, they proceeded to operate in place of Wham-O. Marketing's principal place of business is in the same Woodland Hills office in which Wham-O had its headquarters. Aguilar Exam. at 59. Marketing sells the same products as Wham-O once sold, id. at 11-12, has many of the same employees, id. at 8-11, and has the same phone numbers, fax numbers, email addresses as Wham-O once did, id. at 185. Marketing sells to the same retailers and uses the same manufacturers as Wham-O and assumed Wham-O's pending purchase orders

---

[6] Marketing asserts that Wham-O's intellectual property was worth $5.8 million, based on a 2006 fair market appraisal. Aguilar Decl. ¶ 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

and pre-paid factory orders. Id. at 48-51. Marketing has also collected on Wham-O's accounts receivable, id. at 55, 63, and has a common officer in the person of Aguilar, id. at 8, 22-24. Holding owns the same patents and trademarks previously held by Wham-O. Pls. Exs. JJ-MM. Moreover, Holding is owned by Cheng Hsieh, Pls. Ex. P, the husband of Wham-O's owner Raylin Hsieh. Additionally, Aguilar testified that, as of 2012, Cheng Hsieh spoke to Aguilar five to eight times per month, Aguilar Exam. at 24, suggesting coordination between the operations of Marketing and Holding.

### III.   DISCUSSION

#### A.   Amending the Judgment

Federal Rule of Civil Procedure 69 provides that the proceedings for the execution of a money judgment must "accord with the procedure of the state where the court is located." Under California law, Code of Civil Procedure section 187 confers on a court "all the means necessary" to "carry [its jurisdiction] into effect." This section "allows courts to amend a judgment to add additional judgment debtors." Mad Dogg Athletics, Inc. v. NYC Holding, 565 F. Supp. 2d 1127, 1130 (C.D. Cal. 2008) (citation omitted). One basis for adding additional judgment debtors is that the additional debtors are liable as successors to the original debtor. See McClellan v. Northridge Park Townhome Owners Ass'n, Inc., 89 Cal. App. 4th 746, 754-55 (2001).

Successor liability is premised on the principle that, "if a corporation organizes another corporation with practically the same shareholders and directors, transfers all of the assets but does not pay all the first corporation's debts, and continues to carry on the same business, the separate entities may be disregarded and the new corporation held liable for the obligations of the old." Id. at 754 (citation omitted); see also 9 Witkin, Summ. Cal. Law Corporations § 16 (10th ed. 2005). If one corporation transfers it assets to another corporation, "the latter is not liable for the debts and liabilities of the former unless . . . the purchasing corporation is merely a continuation of the selling corporation, or . . . the transaction is entered into fraudulently to escape liability for debts." McClellan, 89 Cal. App. 4th at 754; see also Katzir's Floor and Home Design, Inc. v. M-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

MLS.com, 394 F.3d 1143, 1150 (9th Cir. 2004).[7] Here, plaintiffs seek to amend the judgment on both of these grounds.

      1.     Mere Continuation Theory

A corporation is considered a "mere continuation" of another only if "no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors," or "one or more persons were officers, directors, or stockholders of both corporations." Ray v. Alad Corp., 19 Cal. 3d 22, 28 (1977); see also Katzir's, 394 F.3d at 1150. The imposition of successor liability on this theory also requires a "direct sale of assets from the predecessor corporation to the successor corporation." Katzir's, 394 F.3d at 1151 (quoting Maloney v. Am. Pharm. Co., 207 Cal. App. 3d 282, 288 (1988)).

Plaintiffs contend that Marketing and Holding are collectively the "mere continuation" of Wham-O, and should therefore be held liable as Wham-O's successors. Mot. Alter J. at 23-24. The Court disagrees because neither Marketing nor Holding acquired Wham-O's assets via a direct sale. See Katzir's, 394 F.3d at 1151; Maloney, 207 Cal. App. 3d at 288. Rather, Cheng Hsieh acquired Wham-O's assets in a foreclosure. He then sold Wham-O's current assets to Marketing, and assigned Wham-O's intellectual property to Holding. Plaintiffs argue that Maloney and Katzir's do not require a direct sale in the present case because here, the foreclosure was conducted by a shareholder, Cheng Hsieh. Reply at 3-4. By contrast, plaintiffs argue, the transfer of assets from the original corporation to its purported successor occurred via a neutral third-party receiver in Katzir's, see 394 F.3d at 1147, and via a disinterested bank in Maloney, 207 Cal. App. 3d at 285. The Court finds this argument unpersuasive because neither Katzir's nor Maloney suggests that the "direct sale" requirement is subject to

---

[7] A motion to amend a judgment under Code of Civil Procedure section 187 may be decided without an evidentiary hearing. See Elvis Presley Enters. v. Passport Entertainment, 2:02-cv-7042-RSWL-RZx, dkt. #'s 177, 182 (C.D. Cal. Dec. 13, 2007), aff'd, 334 Fed. Appx. 810, 811-12 (9th Cir. May 29, 2009); Bank of Montreal v. SK Foods, LLC, 476 B.R. 588, 594-95, 597-601 (N.D. Cal. Aug. 10, 2012); UMG Recordings, Inc. v. BDC Music Group, 2011 WL 798901, at *1 (C.D. Cal. Feb. 25, 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

exceptions, and this Court is bound to follow the rule of the Ninth Circuit set forth in Katzir's.

2.  Fraudulent Transaction Theory

Plaintiffs also assert that Marketing and Holding are liable as successors to Wham-O on the grounds that the transfer of Wham-O's assets to Cheng Hsieh and then to Holding and Marketing was "entered into fraudulently to escape liability for debts." See McClellan, 89 Cal. App. 4th at 754. "When actual fraud or the rights of creditors are involved, . . . "courts uniformly hold the new corporation liable for the debts of the former corporation." Blank v. Olcovich Shoe Corp., 20 Cal. App. 2d 456, 461 (1937). Successor liability is an equitable doctrine, and it is therefore "'appropriate to examine successor liability issues on their own unique facts.'" Cleveland v. Johnson, 209 Cal. App. 4th 1315, 1330 (2012). "As with other equitable doctrines . . . considerations of fairness and equity apply." Id.

Civil Code section 3439.04 states that, in determining whether a transfer of assets was made with "actual intent to hinder, delay, or defraud any creditor," courts may consider the following factors:

(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property transferred after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

    (11)    Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor

Cal. Civ. Code § 3439.04(a), (b)(1)-(11).[8] Here, the evidence shows that Cheng Hsieh's foreclosure on Wham-O's assets, and subsequent transfer of those assets to Marketing and Holding was conducted for the purpose of "escap[ing Wham-O's] liability" under the judgment. See McClellan, 89 Cal. App. 4th at 754. In this regard, the transactions detailed by plaintiffs display general circumstantial evidence of fraudulent intent, as well as several badges of fraud.

    First, when Cheng Hsieh foreclosed on Wham-O's assets, Wham-O did not receive "a reasonably equivalent value" in exchange for the discharge of its debt to Hsieh because, according to Wham-O's balance sheets, Hsieh received approximately $31 million worth of assets even though he was owed only $13,650,684. See Cal. Civ. Code § 3439.04(b)(8) (considering "[w]hether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred"). Next, this foreclosure was "disclosed or concealed" because the foreclosure took place via a private sale, and no creditors were notified. See Cal. Civ. Code § 3439.04(b)(3) (considering whether the "transfer or obligation was disclosed or concealed"). Additionally, the foreclosure occurred on June 11, 2012, less than one month prior to Wham-O's default on its payments under the Settlement and License

---

    [8] While the codified list of "badges of fraud" is set forth in the Uniform Fraudulent Transfer Act, Cal. Civil Code § 3439, et seq., and is not expressly incorporated into California's common law of successor liability, see Wilson v. Metals USA, Inc., 2012 WL 4888477, at *9 (E.D. Cal. Oct. 12, 2012), the Court nonetheless finds the list to be persuasive in evaluating whether the transfer of assets from Wham-O to Holding and Marketing was effected for the purpose of escaping liability for Wham-O's debts. In this regard, in Elvis Presley Enters. v. Passport Video, 334 Fed. Appx. 810, 811-12 (9th Cir. May 29, 2009), the Ninth Circuit cited Civil Code section 3439.04 in connection with its determination that the district court did not abuse its discretion in amending the judgment. The court held that the amendment was proper because substantial evidence supported the district court's finding that a corporation should be held liable as successor on the grounds that it was a recipient of "asset transfers [that were] fraudulent and undertaken for the purpose of escaping liability." Id. at 811.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

Agreements. Johnson Decl. in Support of Entry of J. ¶ 7. See Cal. Civ. Code § 3439.04(b)(9) (considering whether "the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred").

Hsieh then sold Wham-O's current assets, valued at approximately $22 million, to Marketing for $11 million, and provided Marketing with an "extended payment plan." Aguilar Decl. ¶ 35. Hsieh's provision of an extended payment plan, taken together with the fact that the sale occurred less than one month after the foreclosure, supports the conclusion that the foreclosure and subsequent sale of Wham-O's non-current assets were conducted for the purpose of shielding these assets from attachment by judgment creditors such as plaintiff, and not for a legitimate business purpose. Moreover, Marketing has not yet made payments to Hsieh in exchange for Marketing's purchase of Wham-O's current assets, but Hsieh has "not yet declared a default," Aguilar Decl. ¶ 37, suggesting that Hsieh's sale of Wham-O's current assets to Marketing was intended as a means of allowing Wham-O's operations to continue substantially the same as before the entry of judgment in this case, but under the guise of a new name and without the encumbrance of any of Wham-O's debts. See Aguilar Exam. at 108 (stating that Aguilar formed Marketing as "plan B" in order to try to "rescue whatever was left of [Wham-O's] sales and inventory and . . . potentially bring Wham-O back [on] track and make it bankable"). This conclusion is further bolstered by the fact that Aguilar formed Marketing on July 27, 2011, the same day as the execution of the Settlement Agreement, see Cal. Civ. Code § 3439.04(b)(10) (considering whether the "transfer occurred shortly before or shortly after a substantial debt was incurred"). Similarly, Holding received all of Wham-O's intellectual property by assignment from Hsieh, and then proceeded to license it to Marketing by agreement dated November 28, 2012. Aguilar Decl. ¶ 36. Hsieh's acquisition of Wham-O's intellectual property was not supported by adequate consideration for the same reasons as Hsieh's acquisition of Marketing's assets, namely, that the value of the assets foreclosed upon exceeded the value of the loan made by Hsieh to Wham-O.[9] Based on this evidence, the Court finds that the transfer of Wham-O's assets to Holding and Marketing via Cheng Hsieh was effectuated for the purpose of

---

[9] Moreover, the existence of the license agreement, combined with the fact that Cheng Hsieh continued to communicate frequently with Aguilar in 2012, see Aguilar Exam. at 24, demonstrates that Holding and Marketing are operating in concert to carry on Wham-O's business in the manner described in Section II.

Case 2:09-cv-08133-CAS-JC   Document 80   Filed 04/07/14   Page 12 of 14   Page ID #:1807

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

avoiding payment of the judgment in the present case. Accordingly, the Court concludes that the judgment should be amended to include Marketing and Holding as additional judgment debtors.

Marketing argues that Cheng Hsieh's foreclosure was supported by adequate consideration because Wham-O's financial statements "overstate the book value" of its assets, and the "$31 million value referenced in [plaintiffs' motion] was an old value carried over from prior financial statements." Opp. at 9 (citing Aguilar Decl. ¶ 40). This argument fails because Marketing provides no evidentiary support for this assertion.[10] Moreover, plaintiffs represent that these financial statements were produced during discovery in this action and as part of the judgment debtor exam, without ever informing plaintiffs that these statements were inaccurate. Reply at 8. Plaintiffs contend that Aguilar should be estopped from now arguing that these statements are inaccurate. The Court agrees, and accordingly finds that Wham-O's financial statements provide an appropriate basis for determining the value of Wham-O's assets.[11]

---

[10] At oral argument, counsel for Marketing also argued that Code of Civil Procedure section 187 did not apply in the case of a fraudulent conveyance, and that this Court should not amend the judgment until it holds an evidentiary hearing regarding plaintiffs' claims. The Court finds these arguments unpersuasive for the reasons set forth above.

[11] Marketing also argues that, during the negotiation of the Settlement and License Agreements, Wham-O advised plaintiffs that a foreclosure by Cheng Hsieh was a possibility. Cheng Decl. ¶ 4. Plaintiffs dispute this assertion. Dkt. #78 ("Johnson Reply Decl.") ¶ 9. In any event, this assertion is irrelevant because the mere fact of the possibility of a foreclosure by Cheng Hsieh is insignificant. Rather, it is the facts attendant to that foreclosure, such as the lack of adequate consideration received by Wham-O, the lack of notice to Wham-O's creditors, and the failure to conduct an independent valuation of Wham-O's assets, which forms the basis for the Court's conclusion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

### B. Interest and Attorneys' Fees

Plaintiffs seek $103,007.25 in attorneys' fees and $9,497.90 in costs arising from their attempts to collect on this judgment, the filing of this motion, and the initiation of a separate action against Holding, Marketing, Hsieh, and Aguilar.[12] Mot. Alter J. at 23-24; Johnson Decl. ¶¶ 22-37. Plaintiffs seek these fees and costs based on provisions in the Settlement and License Agreements that provide for the award of fees in any proceeding relating to them. Pls. Ex. C ¶ 4.3; Pls. Ex. D ¶ 10.2. Marketing does not argue that attorney's fees are inappropriate, and does not challenge the amount of attorney's fees. However, Marketing objects, on the grounds of lack of foundation and authentication, to the portion of plaintiffs' counsel's declaration that sets forth the amount of attorneys' fees incurred. The Court OVERRULES this objection because Robert Johnson has personal knowledge of his own fees by virtue of his status as counsel of record, his involvement in this action since its inception, Johnson Reply Decl. ¶ 11, and the fact that the other attorneys and staff working on plaintiffs' behalf are employed by Johnson's firm, Johnson Decl. ¶ 36. Accordingly, the Court will add $103,007.25 in attorneys' fees and $9,497.90 in costs to the judgment.

Plaintiffs also seek $217,580.25 in interest, at the rate of 10 percent per annum, as set forth in the Settlement and License Agreements. Mot. Alter J. at 23-24; Johnson Decl. ¶ 38. Marketing also objects to the interest sought on the grounds that it lacks foundation and authentication. That objection is OVERRULED because the calculation of 10 percent per annum interest since the entry of judgment in the amount of $1,454,520 on August 13, 2012, is a mathematical calculation that the Court is able to independently verify. Based on the Court's calculation, plaintiffs' request for interest is properly calculated.

---

[12] In the separate action, see Agit Global Inc., et al. v. Wham-O Marketing Inc., et al., 2:13-cv-08557-CAS-JCx, plaintiffs assert claims for fraudulent transfer, successor liability, and patent infringement. Plaintiffs represent that they will voluntarily dismiss the separate action, now pending in this Court, if the judgment is amended to add Holding and Marketing, and plaintiffs are able to collect on the judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:09-cv-08133-CAS(JCx) | Date | April 7, 2014 |
|---|---|---|---|
| Title | AGIT GLOBAL, INC. ET AL. V. WHAM-O, INC., ET AL. | | |

## V. CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS plaintiffs' motion to amend the judgment to add Wham-O Marketing, Inc. and Wham-O Holding, Ltd. as judgment debtors. The judgment is hereby further amended to include $217,580.25 in interest, $103,007.25 in attorneys' fees, and $9,497.90 in costs.

IT IS SO ORDERED.

|  | 00 | : | 11 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |